Peck, J.,
delivered the opinion of the court:
DeWitt 0. Crowell represents by his petition that on the 16th day of May, 1864, he entered into the following contract with the United States:
“Butler’s Landino,
“ Bermuda Hundred, May 16, 1864.
“ This agreement made this sixteenth day of May, 1864, by and between Dr. Charles McCormick, medical director of General Butler’s army in the ficdd, and DeWitt Clinton Crowell, of Norfolk, Virginia, witnesseth: That for and in consideration of the sum of thirty dollars per ton for each and every ton of solid ice, to be paid by the party of the first part to the party of the second part, the said party of the second part promises and agrees to deliver or cause to be delivered to the said party of the first part as many tons of solid ice as he may require at any time and at all times, he, the party of the first part may demand. The said ice to be delivered upon written orders of the party of the first part, or the provost marshal, and the said party of the second part to keep an accurate account of all ice delivered, and to whom.
“CHARLES McCORMICK,

“Medical Director Gen. Butler’s army in the field.

“D. C. CROWELL.”
The said Charles McCormick acting under direct instructions from Major General Butler, then in command of a portion of the armies of the United States.
The petition also avers that at the time the contract was entered into there was a pressing emergency and an immediate necessity for *505 ice, because the army under General Butler was in active service, some two or three thousand of his troops suffering from wounds in the field and in the hospital.
Immediately after the making of the contract the claimant entered upon its performance, and purchased, transported, and delivered ice wherever he was directed by Surgeon McCormick, at various places on the J ames and Appomattox rivers, as well as in the field, for which he was paid on account at different times the sum of $10,009 91; that there is remaining due to him the sum of $15,051 70, as is shown by the following voucher :
The United States to D. G. Crowell, Dr.
From 1st to 31st August, 1864, 350,372 lbs. ice, at 1¿ cts. $5,255 58 From 1st to 30th September, 1864,268,215 lbs. ice, at l£ cts. 4,023 22 From 1st to 31st October, 1864, 320,860 lbs. ice, at 1J cts. 4,812 90 From 5th to 7th November, 1864, 64,000 lbs. ice, at 1J cts. 960 00
$15,051 70
The ice above mentioned was furnished to the hospitals and hospital transports of the army of the James at Bermuda Hundred, Broadway Landing, and Point of Bocks, Virginia.
I certify that the above account is correct and just; that the ice furnished was necessary for the use of the sick and wounded of General Butler’s army in the field.
Approved:
CHABLES McCORMIOK, Surgeon U. S. A., Medical Director Deft of Virginia and North' Carolina.
CHARLES McCORMIOK, Surgeon U. S. A.,

Medical Purveyor.

For which sum he asks a judgment.
This ease was submitted for judgment early in the present term, and was returned for further proof, more especially because of the letter of Surgeon Suckley, (who had not then been examined,) requesting if “ bills for ice furnished the medical department of that army during the last summer (that of 1864) by one Crowell should be presented, that they should be referred to him for examination.” It was then supposed that if that gentleman should be examined he might disclose facts which would be of benefit to the United States.
Surgeon Suckley and other witnesses have been examined. General Butler has given a second deposition; and the claimant, by this additional testimony, has found new support for his claim.
*506 There is no doubt that the ice, for which compensation is now-sought, was delivered. The Surgeon General makes no objection to the demand for that reason. He only objects to the price demanded, and says that the ice needed by the sick and wounded of the army under command of General Butler should have been obtained at Fort Monroe, and transported by the quartermaster’s department to the points at which it was required for issue. On the other hand, General Butler, who was on the spot and in direct connection with the whole transaction, deposes that the supply of ice, as he was informed by his chief of staff, had failed from some cause, and thereupon he gave orders that the most energetic measures should be taken to remedy the omission, and afterwards he was informed by his medical director that this had been done. The energetic measures used by the medical director produced the contract now under consideration. It may also be remarked that the medical director, whose especial duty it was to know whether the ice could or could .not be procured as the Surgeon General supposes it could have been, executed this contract, which it would seem he would not b^ve done unless be also believed it was necessary. Suppose General Butler or the medical director neglected to take the proper steps to procure ice, as the Surgeon General intimates they did, was that a fault which should prevent the claimant from recovering ? We think not.
The season at which the contract was made, and the manner of delivery required by it, at various places in quantities from one pound upwards, explain the necessity for paying the price agreed upon.
The claimant was a loser by the contract. Although the price agreed to be paid is apparently high, it was not so in reality, by reason of the great loss to the claimant occasioned by the melting of the ice, which had to be delivered from boats in small quantities at various places during the summer months.
The claimant, on his part, performed the contract to the entire satisfaction of those who were to judge of its execution. He has not only alleged but proved that an exigency existed to justify the agent of the United States in making the contract in the manner in which it was made.
Had General Butler permitted the sick and wounded soldiers of his command to suffer for the want of ice, in order that recourse might be had against some delinquent contractor, he would ■ have been a gross offender against humanity and his duty ; and it seems strange that the agents of a government like ours are willing 'to resort to what has too much the appearance of a pretext to avoid the payment of money so *507 fairly earned and justly due as that which this claimant seeks to recover.
Disease and wounds will not wait in their healing for the delay of formalities, nor could suffering be alleviated by the instrumentality of an unenforced or disregarded contract. If the ice contracted for by the Surgeon General was not furnished, it had to be procured elsewhere. This is the simple statement as connected with this transaction.
After this claimant had furnished the ice, had made his outlay of time and money, no person objecting in the mean time to what he was doing, it appears to be ungracious to turn him off, by stating that some officer had bargained with him at too high a price .for his commodity. It nowhere appears that a word of complaint had ever been uttered against Surgeon McCormick for making the bargain which is now sought to be repudiated. A policy which protects a transgressing officer at the expense of an innocent civilian who has been misled by him, is as injurious to the government as its morality is pernicious.
The claimant must obtain his pay from the government or not get it. The officer who contracted with him, acting in the line of his duty, is not liable, (Parks v. Ross, 11 Howard, 362,) nor should he be; he acted for his government; the contract was not about any matter of personal interest to himself; nor is it to be presumed that he could in any way be benefited by it.
The Surgeon General makes no imputation of bad faith upon his officer or the claimant; nor is a contract like this prohibited by law. As between individuals, there could not be a doubt of the right of the claimant to recover under similar circumstances. Performance by the claimant was complete; the ice was received and used without objection as to quality or price; the agency of Surgeon McCormick is recognized and admitted; the necessity was urgent; the benefit to the United States is apparent; all the elements and conditions necessary to bind one party to another exist in this case on the part of the United States towards the claimant; and every legal and moral principle concurs to support his demand.
A judgment should be rendered in his favor for the sum of fifteen thousand and fifty-one dollars and seventy cents.